## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TISHA S. HILLMAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:20-cv-02486-PX |
| FLAGSTAR BANK, FSB, *et al.*, | * | |
| Defendants. | * | |

\*\*\*

## <u>MEMORANDUM OPINION</u>

Pending before the Court are Defendants Flagstar Bank, FSB, and BWW Law Group, LLC's motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF Nos. 7, 9.  The matter has been fully briefed, and no hearing is necessary.  *See* Loc. R. 105.6. For the following reasons, the motions to dismiss are granted.

### I.    Background

Plaintiff Tisha S. Hillman, an attorney representing herself,[1] owns the real property located at 2832 Nomad Court West, Bowie, Maryland 20716 ("the Property").  ECF No. 4 ¶ 1. To purchase the Property, Hillman obtained a loan for which she executed a Deed of Trust conveying legal title to, and foreclosure rights on, the Property in the event she defaulted on the loan.  ECF No. 7-3.  The loan was subsequently assigned to Pingora Loan Servicing, LLC ("Pingora").  ECF No. 7-4.  Defendant BWW Law Group, LLC, ("BWW") is a Maryland law firm which represents Pingora in foreclosure proceedings.  ECF Nos. 4 ¶¶ 8–9; 9-3.

---

[1] As an attorney, Hillman is not afforded the same leniency as a non-lawyer pro se plaintiff.  *See Diprete v. 950 Fairview St., LLC*, No. 15-0034, 2016 WL 6137000, at *4 (W.D. Va. Oct. 21, 2016), *appeal dismissed*, No. 16-2335, 2017 WL 2241808 (4th Cir. May 22, 2017) (finding that because *pro se* plaintiff is an attorney no "special consideration or leniency is warranted" and collecting cases); *see also Gordon v. Gutierrez*, No. 6-861, 2006 WL 3760134, at *1 n.1 (E.D. Va. Dec. 14, 2006) ("Plaintiff represents that she is an attorney, a law school graduate, and a member of a neighboring state's bar.  As such, she is not entitled to the liberal construction of pleadings ordinarily afforded *pro se* litigants.").  Nonetheless, even if the Court affords the pleadings a generous reading as if Hillman were not a lawyer, the claims would still fail for the reasons discussed below.

Defendant Flagstar Bank, FSB, (the "Bank"), headquartered in Troy, Michigan, is the mortgage servicer. ECF No. 4 ¶¶ 3, 5–6. The Bank advertises that it conducts business guided by the "STAR Values" of service, trust, accountability, and results. *Id.* ¶ 32. The Bank specifically promises to "do things right the first time; offer the same level of service we expect and appreciate in return; give substance—not lip service; build a culture of mutual respect and transparency; build a culture where the integrity we strive to uphold are without compromise; and live up to the commitments we make to our customers." *Id.*

In October 2018, the ceiling at the Property collapsed, costing Hillman $70,000 worth of repairs. ECF No. 4 ¶ 11. After the repairs, Hillman struggled to pay her mortgage and ultimately defaulted on the mortgage loan. That same month, BWW, acting on behalf of the Bank, began foreclosure proceedings on the Property in the Circuit Court for Prince George's County, Maryland. *Id.* ¶ 9; ECF No. 9-4; *WBGLMC v. Hillman*, No. CAEF18-35990 (Cir. Ct. Prince George's Cnty. filed October 11, 2018).[2]

Hillman next filed for Chapter 13 Bankruptcy on October 22, 2018. ECF No. 4 ¶ 10; *In re Tisha Sherrell Hillman*, No. 18-24004-TJC (Bankr. D. Md. filed October 22, 2018). Consequently, the automatic stay provision of the Bankruptcy Act, 11 U.S.C. § 362, halted the foreclosure proceedings. Pingora filed a proof of claim in the Bankruptcy court related to the secured loan on the Property, and the Bank requested leave from the automatic stay provision. ECF Nos. 7-6; 7-7. These filings reflect that Hillman had fallen behind in her mortgage

---

[2] The Court takes judicial notice of documents filed in Hillman's bankruptcy and state-court foreclosure actions, as well as those on file with the Prince George's Land Records Department. *Haley v. Corcoran*, 659 F. Supp. 2d 714, 722 n. 4 (D. Md. 2009) ("A district court may take judicial notice of 'matters of public record' without converting a Rule 12(b)(6) motion into a motion for summary judgment.").

payments and that per the loan agreement terms, she owed an outstanding loan balance of $210,464.55 plus approximately $7,456.06 in post-petition arrears.  ECF Nos. 7-6; 7-7 at 2–3.

On April 22, 2019, the Bankruptcy court approved Hillman's Chapter 13 plan.  ECF No. 7-8.  The plan provided that Hillman would satisfy the pre-petition arrearage through twelve monthly payments to the Bankruptcy Trustee.  *Id.*  Hillman also agreed that the Bankruptcy court would enter an "Order and Stipulation Modifying the Automatic Stay" ("Stipulation").  ECF No. 7-9.  The Stipulation also provided for Pingora to file a new claim for the post-petition arrears and that Hillman would, in turn, file an amended Bankruptcy plan to pay off those arrears.  *Id.* Hillman also agreed that she would make monthly mortgage payments of $1,174.55 beginning May 2019 as part of the Stipulation.  ECF Nos. 4 ¶¶ 12-13; 7-9. at 2-3.

While Hillman made some payments towards her mortgage, they were not full payments. The Defendants also maintain that Hillman never filed an amended plan and failed to cure her post-petition arrears.[3]  And on September 27, 2019, the Bankruptcy court dismissed Hillman's Chapter 13 action because failed to make the plan payments.  ECF Nos. 7-5 at 2–3; 7-10.

The next month, the Bank began rejecting Hillman's partial monthly mortgage payments and charging associated fees, per the Deed of Trust terms.  ECF No. 4 ¶¶ 19–20; 7-3 at 4.  BWW likewise attempted to resurrect the foreclosure action in Circuit Court.  ECF No. 4 ¶ 15.  Hillman objected, arguing that she had fully complied the terms of the Stipulation, and thus resuming the foreclosure action was improper.  ECF No. 11-10 at 5–9.  The Circuit Court dismissed the action without prejudice and directed BWW to pay $ 2,037.09 in attorney's fees.  ECF No. 11-10 at 5–10, 39–46.  The Circuit Court later reconsidered its decision and vacated the award of attorney's

---

[3] Hillman avers that she filed, and the Bankruptcy court approved, an amended Chapter 13 plan by the agreed upon dates set out in the Stipulation.  ECF No. 4 ¶ 12.  The docket for the Bankruptcy action, however, does not reflect that an amended Chapter 13 plan had been filed, let alone approved.  *See* ECF No. 7-5 at 3; *In re Tisha Sherrell Hillman,* No. 18-24004-TJC (Bankr. D. Md. filed October 22, 2018).

fees but allowed the dismissal without prejudice to stand.  ECF No. 9-6.  At present, Hillman

resides in the Property and pursuant to the Coronavirus Aid, Relief, and Economic Security Act

(CARES ACT), 15 U.S.C. § 9056, a federal foreclosure moratorium has prohibited any further

action.  *See* ECF Nos. 4 ¶ 1; 9-1 at 5 n. 10.

On July 23, 2020, Hillman filed a separate suit in the Prince George's County Circuit

Court against the Bank and BWW, which Defendants timely removed to this Court.  ECF No. 1.

Hillman brings claims for breach of contract, intentional interference with contractual relations,

unjust enrichment, breach of servicer duty under the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. § 2605(k)(1)(C); unfair, deceptive, or abusive practices under the

Consumer Finance Protection Act ("CFPA"), 12 U.S.C §§ 1036(a)(1)(b) & 5536(a)(1)(b);

negligence, and negligent and intentional infliction of emotional distress.  ECF No. 4.  Hillman

seeks compensatory damages of $80,537.09, punitive damages, attorney's fees and costs, and an

order enjoining Defendants from attempting to foreclose on the Property.  *Id.* at p. 14.

## II.    Standard of Review

A motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the

sufficiency of the complaint.  In reviewing the motion, the Court "accepts the factual allegations

in the complaint as true and construes them in the light most favorable to the nonmoving party."

*Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).  The Court may also

consider documents attached to the motion to dismiss when "integral to and explicitly relied on

in the complaint, and when the [opposing parties] do not challenge the document[s']

authenticity."  *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015)

(quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004))

(internal quotation marks omitted).  But the Court does not look beyond the four corners of the

Complaint and incorporated attachments, and thus will not allow amendment of the Complaint through a plaintiff's artful response to the motions. *See Whiting–Turner Contracting Co. v. Liberty Mut. Ins*. Co., 912 F. Supp. 2d 321, 334 (D. Md. 2012) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotations omitted); *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands*, LLC, 713 F.3d 175, 184 (4th Cir. 2013).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A plaintiff must provide sufficient detail to show that he has a more-than-conceivable chance of success on the merits." *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018), *vacated on other grounds*, 140 S. Ct. 2736 (2020).

The Defendants challenge the sufficiency of all claims. The Court discusses each in turn.

## III.    Analysis

### A.  Breach of Contract (Count I)

The Complaint principally avers that the Bank breached its "STAR values" and the Stipulation when it refused to accept Hillman's partial mortgage payments in 2019. ECF No. 4 ¶¶ 31–39. The Bank argues that the STAR values material and the Stipulation do not, as a matter of law, create legally binding contracts with Hillman. ECF No. 7-1 at 5–6. Notably, Hillman agrees. ECF No. 11-1 at 6. In responding to these motions, Hillman expressly asks that the Court *declare* no contract was ever formed. *Id*.

The Court struggles mightily to understand the point of Hillman's concession given that she chose to bring the breach of contract claim in the first place. But because Hillman agrees

5

that the Star values material and Stipulation do not create a binding contract, the Court finds that she has abandoned the contract claim. *Cf. Ferdinand–Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D. Md. 2010) (plaintiff's failure to defend against argument in motion to dismiss constitutes abandonment of claim.); *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 419 (D. Md. 2015). Thus, Count I must be dismissed.

## B. Intentional Interference with Contractual Relations (Count II)

Next as to Count II, intentional interference with contractual relations, Defendants rightly argue that this claim may be brought only as to third parties who interfere with the contractual relationship of the contracting parties. ECF Nos. 7-1 at 6–7; 9-1 at 8–10. In Maryland, one party to a contract cannot sue the other party or its agents for "interfering" with the contract's terms. *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 630 (2003) (collecting cases); *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 447 n. 12 (D. Md. 2012); *see also Byington v. Vega Biotechnologies, Inc.*, 869 F. Supp. 338, 342–43 (D. Md. 1994). That claim, instead, properly sounds in breach of contract. *Wilmington Tr. Co. v. Clark*, 289 Md. 313, 329–30 (1981).

When reading the Complaint facts most favorably to Hillman, no contractual interference claim has been pleaded. Hillman plainly avers that she enjoys a contractual relationship with the Bank and that BWW, as the substitute trustee, representing the Bank in foreclosure proceedings, acts as the Bank's agent. ECF No. 4 ¶¶ 41–42. Thus, BWW, as an agent of the Bank, cannot be said to have "interfered" with the contract between Hillman and the Bank. Nor does Hillman otherwise plead that any other third party interfered with her contractual relationship in connection with her mortgage loan. Accordingly, the tortious interference with contractual relations claim fails as a matter of law.

### C.  Unjust Enrichment (Count III)

The Complaint next avers that in the event of foreclosure, the Bank will be "unjustly enriched" because it will receive $70,000 worth of repairs recently made on the Property.  ECF Nos. 4 ¶¶ 47–53; 11-1 at 8–9.  Defendants argue that an unjust enrichment claim is not available where the parties' relationship is governed by a valid and binding contract, here the Deed of Trust.  ECF Nos. 7-1 at 7–8; 9-1 at 10–12.  Defendants are correct that in Maryland, an unjust enrichment claim cannot proceed where an express contract between the parties governs the subject matter of the claim.  *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96 (2000); *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 573 (D. Md. 2012).  Thus, because the terms under which the Bank may sell the Property and recoup the sales proceeds is governed by an express agreement, the unjust enrichment claim must fail.

Perhaps too clever by half, Hillman responds that because she agrees that as to Count I no "contract" has been formed, then the unjust enrichment claim may proceed.  ECF No. 11-1 at 8–9.  This argument is a nonstarter.  The breach of contract claim in Count I rested on the theory that the Star values promotional material and the Stipulation created binding contracts between Hillman and the Bank.  Hillman, to be sure, conceded that neither the Star Values nor the Stipulation created a binding contract, but this says nothing about the legal force of the Deed of Trust.  Further, it is the Deed of Trust that clearly sets out binding contractual terms which cover the subject of the supposed unjust enrichment, including the circumstances under which the Bank may refuse payments, institute foreclosure actions, and disburse funds in excess of the loan balance after a foreclosure sale.  *See* ECF No. 7-3 at 4, 12.  So it is the Deed of Trust that governs whether the Bank will keep the value added as a result of the roof improvements.  Accordingly, the unjust enrichment claim fails because a valid contract, here the Deed of Trust,

reaches the same subject matter.  *See Willis v. Bank of Am. Corp.,* No. ELH-13-02615, 2014 WL 3829520, at *28 (D. Md. Aug. 1, 2014) (collecting cases).

Alternatively, even if the Deed of Trust did not cover the subject matter of the unjust enrichment claim, the claim fails because the Defendants have not been "enriched," unjustly or otherwise.  For the unjust enrichment claim to survive challenge, the Complaint facts must make plausible that Hillman (1) conferred a benefit upon Defendants; (2) Defendants appreciated or knew of the benefit; and (3) Defendants accepted or retained the benefit under such circumstances as to make it inequitable for Defendants to retain the benefit without the payment of its value.  *James B. Nutter & Co. v. Black*, 225 Md. App. 1, 25 (2015).  But according to the Complaint, the averred "benefit" is Hillman's repairs to the Property and the overall increase in the home's value since Hillman's purchase.  ECF No. 4 ¶¶ 48–52.  However, Hillman still resides at the Property, and so it is she who reaps the benefit of the improvements.  *Cf. Simard v. White*, 383 Md. 257, 325 (2004) (explaining that a purchaser's improvements to a property are not made for the benefit of the mortgagor).  More fundamentally, nothing has been conveyed to the Bank because foreclosure proceedings are in limbo.  *See* ECF Nos. 4 ¶ 1; 9-1 at 5 n. 10. Consequently, Hillman's unjust enrichment claim cannot survive challenge.  It is dismissed.

### D.  RESPA violation (Count IV)

The Complaint avers that the Bank breached its duties as a servicer by failing to correct accounting errors or timely respond to Hillman's loss mitigation application, and for failing to pay the taxes, insurance premiums and other charges, all in violation of RESPA.  ECF No. 4 ¶¶ 54–63; *see* 12 U.S.C. § 2605(k)(1)(C).  RESPA ensures "that consumers . . . are provided with greater and more timely information on the nature and costs of the [mortgage] settlement process and are protected from unnecessarily high settlement charges caused by certain abusive

8

practices[.]"  12 U.S.C. § 2601(a).  To achieve this purpose, RESPA imposes a duty on loan

servicers to respond to any "qualified written request" ("QWR") submitted by the borrower.  12

U.S.C. § 2605(e)(1); *see also Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md.

2018).  A borrower must submit a QWR, which identifies the borrower and the pertinent account

and "includes a statement of the reasons for the belief of the borrower . . . that the account is in

error or provides sufficient detail to the servicer regarding other information sought by the

borrower."  12 U.S.C. § 2605(e)(1)(B).  Then under RESPA, the servicer of a federally related

mortgage loan must acknowledge receipt of a QWR within five business days. 12 U.S.C. §

2605(e)(1)(A); 12 C.F.R § 1024.35(d).  *See also* 12 U.S.C. § 2605(k)(1)(C) (prohibiting

mortgage servicers from failing to timely respond to borrower error correction requests.).  Within

thirty business days after receiving the QWR, "the servicer must [also]: (1) make corrections to

the borrower's account; (2) after conducting an investigation, provide a written explanation

stating the reasons the servicer believes the account is correct; or (3) conduct an investigation

and provide the information requested by the borrower or an explanation of why the information

is unavailable."  *Barr*, 303 F. Supp. 3d at 417 (citing 12 U.S.C. § 2605(e)(2)).  In the event a

servicer fails to comply with these requirements, RESPA permits the borrower to file suit and

recover actual damages arising from such failures.  12 U.S.C. § 2605(f)(1)(A); *see also Thomas

v. Ocwen Loan Servicing*, LLC, No. ELH-17-218, 2017 WL 2645721, at *6 (D. Md. June 19,

2017).

Defendants contend that the Complaint does not make plausible that Hillman submitted a

QWR to the Bank.  The Court agrees.  When viewing the Complaint facts as true and most

favorably to Hillman, the Court cannot determine what correspondence, if any, would satisfy the

QWR requirements.  The Complaint instead states, in conclusory terms, that the Bank "was put

on notice of accounting errors on Plaintiff's account with Bank on or before February 11, 2020"

and that the Bank failed "to take timely action to respond to Property Owner's request to avoid

foreclosure." ECF No. 4 ¶¶ 55–56. This bare allegation is plainly insufficient.

Plaintiff attempts to beef up the claim in her response to Defendants' motions. ECF No.

11-1 at 4-5, 9. Generally, the Court does not permit a plaintiff to add facts to the Complaint by

way of motions practice. *See Whiting–Turner Contracting Co. v. Liberty Mut. Ins*. Co., 912 F.

Supp. 2d 321, 334 (D. Md. 2012); *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v.

OpenBand at Broadlands*, LLC, 713 F.3d 175, 184 (4th Cir. 2013). But even if the Court

considered these additional factual allegations, the claim still fails as a matter of law.

Hillman points to emails that she sent to BWW's counsel on March 3 and 12, of 2020, in

which she contends that the Circuit Court "highlighted several accounting discrepancies" on the

record in prior foreclosure proceedings. ECF Nos. 11-11, 11-13. But these emails do not specify

the supposed accounting errors or otherwise provide the sufficient detail to constitute a QWR. In

the end, Hillman appears to rest on this notion that the state foreclosure proceedings generally

put the Bank on notice of her claimed "accounting errors." That may be, but general notice that

comes from participating in a lawsuit does not substitute for filing a QWR, a necessary predicate

to maintain a RESPA claim. Thus, this claim must be dismissed.[4]

### E. Negligence (Count VI)

The Complaint next avers that the Bank was "negligent" based on a variety of alleged

acts and omissions, including failure to consider Hillman's request to enter a loss mitigation

plan; general interference with her efforts to "save" the home; refusing to accept her monthly

---

[4] The Court also dismisses Hillman's statutory claim brought under the CFPA, 12 U.S.C. §§ 5536 and 1036, because there is no private right of action under the CFPA. *See* 12 U.S.C. § 5564(a) ("If any person violates a Federal consumer financial law, the Bureau may . . . commence a civil action. . . ); *McCray v. Bank of Am., Corp.*, No. ELH-14-2446, 2017 WL 1315509, at *16 (D. Md. Apr. 10, 2017) (collecting cases).

payments; and retaining BWW to represent its interest in foreclosure litigation initially and after the foreclosure action had been dismissed.  ECF No. 4 ¶¶ 71–79.  The Bank urges the Court to dismiss the negligence claim pursuant to the economic loss doctrine.  ECF No. 7-1 at 10–11.

The economic loss doctrine bars a negligence claim where, as here, a plaintiff seeks to recover purely economic losses arising out of a contractual breach.  *Potomac Constructors, LLC v. EFCO Corp.*, 530 F. Supp. 2d 731, 737 (D. Md. 2008) (citing *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, (2007); *U.S. Gypsum Co. v. Mayor & City Council of Baltimore*, 336 Md. 145 (1994)).  The "mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.'" *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 534 (1986) (quoting *Heckrotte v. Riddle*, 224 Md. 591 (1961)); *see Donnelly v. Branch Banking & Trust Co.*, 91 F. Supp. 3d 683, (D. Md. Mar. 3, 2015).  In determining whether to apply the economic loss doctrine, the Court considers (1) "the nature of the harm likely to result from a failure to exercise due care" and (2) "the relationship that exists between the parties." *Jacques*, 307 Md. at 534 (1986).

It is well settled that in Maryland, the relationship between a bank and a borrower is contractual, not fiduciary, and so generally imposes no special duty on the bank.  *See, e.g., Parker v. Columbia Bank*, 91 Md. App. 346, 604 A.2d 521, 532 (1992); *Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 620 (D. Md. 2012), *aff'd*, 714 F.3d 769 (4th Cir. 2013).  Because Hillman has failed to plead any special duty of care that the Bank owed to her, and the Court cannot conceive of one, the claim must fail as a matter of law.  *See Mitchell v. U.S. Bank Nat'l Ass'n*, No. PX-17-1805, 2018 WL 4679949, at *5 (D. Md. Sept. 28, 2018) (economic loss doctrine precludes recovery where negligence claim is merely repackaged wrongful foreclosure challenge.); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 252–53 (D. Md. 2013), *aff'd*,

11

582 F. App'x 246 (4th Cir. 2014) (loan servicer owed no special duty to borrower with respect to loan modifications).

Hillman, in response, maintains that the Bank's misconduct places her at risk of homelessness during a global pandemic, and thus at risk of physical injury sufficient to support a negligence claim.  ECF No. 11-1 at 9–10.  But the Complaint facts, taken as true, simply do not support this theory of injury.  Hillman is still at the Property.  The foreclosure proceedings cannot proceed pursuant to the CARES Act.  Any such future possible "injury" is simply too speculative and uncertain to be considered plausible.  Accordingly, even reading the Complaint most charitably, no version of events saves the claim.  The negligence count is dismissed.

### F.   Intentional Infliction of Emotional Distress (Count VII)

Defendants lastly contend that Hillman has failed to plead sufficient facts to sustain a claim for intentional infliction of emotional distress (IIED).  ECF Nos. 7-1 at 11; 9-1 at 12.  The Court agrees.

IIED claims are reserved for only the most shocking circumstances where a defendant's extreme and outrageous acts cause the plaintiff severe emotional distress.  *Tavakoli-Nouri v. State*, 139 Md. App. 716, 728 (2001).  The claim survives challenge "sparingly and only for opprobrious behavior that includes truly outrageous conduct."  *Savage v. Mayor & City Council of Salisbury*, No. CCB-08-3200, 2010 WL 3038953, at *6 (D. Md. July 30, 2010) (citation omitted).  In those rare instances, the Complaint facts must make plausible that the plaintiff "suffered a severely disabling emotional response to the defendant's conduct, and that the distress was so severe that no reasonable man could be expected to endure it."  *Thacker v. City of Hyattsville*, 135 Md. App. 268, 315 (2000) (internal marks and citation omitted).  This standard sets a high bar.  S*ee B.N.S. by Stuart v. Brito,* No. ELH-17-2670, 2018 WL 5830565, at *10 (D.

Md. Nov. 6, 2018).  Accordingly, Maryland courts routinely reject "conclusory statements of emotional distress" without demonstrably severe injury as insufficient for an IIED claim.  *Karn v. PTS of Am.*, LLC, No. GJH-16-3261, 2017 WL 4162251, at \*5 (D. Md. Sept. 19, 2017).

The Complaint facts, viewed most favorably to Hillman, fall way short of the required severity to make plausible an IIED claim.  Instead, the Complaint merely avers that Defendants intentionally or recklessly, and with discriminatory purpose, blocked her attempts to save her home and did so with the knowledge that those actions *could* cause emotional distress.  ECF No. 4 ¶¶ 81–86.  The Complaint provides absolutely no detail on the distress Hillman has suffered, if any.  *Id.*  To be sure, the Complaint reflects a sad, and all too frequent, occurrence of a homeowner in financial distress. And with this, the Court by no means minimizes Hillman's circumstances, but as a matter of law, Hillman cannot maintain an IIED claim.[5]

### G.  Dismissal with or Without Prejudice

The Court retains discretion to dismiss a claim with or without prejudice.  *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825 (D. Md. 2013) (quoting *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)).  Where "there are no set of fact that the plaintiff could present to support his claim," the claim should be dismissed with prejudice.  *Id.* at 826 (citing *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008)).  However, where a plaintiff may cure the deficiencies in the claim, the Court should dismiss the claim without prejudice.  *See Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013); *Cosner v. Dodt*, 526 F. App'x 252, 253 (4th Cir. 2013).

---

[5] The Court also dismisses the negligent infliction of emotional distress claim (Count VIII) because Maryland law does not recognize this cause of action. *Bond v. U.S. Postal Serv. Fed. Credit Union*, 164 F. Supp. 3d 740, 750 (D. Md. 2015); *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 517 (1995)).

Defendants, of course, urge this Court to dismiss the Complaint entirely with prejudice. The Court finds that certain claims simply cannot be amended to cure the fatal defects as discussed above: interference with contractual relations, unjust enrichment, deceptive acts under the CFPA, negligence, and both intentional and negligent infliction of emotional distress claims. Thus, Counts II, III, V, VI, VII, VIII are dismissed with prejudice.

The Court cannot say the same for Hillman's breach of contract claim.  Although Hillman has failed to state a claim based on the Star values promotional materials and the Stipulation, she clearly has entered into pertinent agreements with the Bank that may give rise to a legally cognizable cause of action now or in the future.  Similarly, to the extent Hillman could allege facts that make plausible she has submitted a valid QWR to the Bank, the RESPA claim may not be forever lost.  Accordingly, the Court dismisses Counts I and IV without prejudice.

## IV.     Conclusion

For the foregoing reasons Defendants' motions to dismiss are GRANTED.  ECF Nos. 7, 9.  Counts II, III, V, VI, VII, and VIII are DISMISSED WITH PREJUDICE.  Counts I and IV are DISMISSED WITHOUT PREJUDICE.

A separate order follows.


_____8/19/21_____                    _____/s/_____
Date                                             Paula Xinis
                                                 United States District Judge

14